### 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

TUCKER'S ADM'R v. NORFOLK AND WESTERN RAILROAD CO.

FEBRUARY 6, 1896.

1. RAILROADS—*Personal Injury—Contributory Negligence—Proximate Cause —Notice—Belief—Care.*—In an action against a railroad company for personal injury, the plaintiff should recover notwithstanding his contributory negligence, if the injury of which he complains was proximately caused by the omission of the defendant, after such notice of the plaintiff's danger as would put a prudent man on his guard, to use ordinary care to avoid the injury. It is not necessary that the defendant should actually know of the plaintiff's danger. It is enough if he have such notice or belief as would put a prudent man on his guard to avoid the injury, and fails to use such care as a prudent man would use under like circumstances.

2. RAILROADS — *Trespasser — Foresight — Protection — Notice —Object Near Track—Duty of Company.*—A railroad company does not owe the duty of foresight to a trespasser on its track. The duty of protection only arises when it has sufficient notice or reason to believe that he is in danger. The fact that the track is straight for a considerable distance and the line of vision unobstructed, and that an object, which is believed to be inanimate, is seen lying near the track, does not impose upon the company the necessity of stopping or reducing the speed of its train before reaching the object, in order to ascertain whether it be an animate or inanimate object. If in the exercise of due care, and keeping a constant lookout, the object is not ascertained to be a human being until too late to avert contact with it, the company is not liable for the consequences of such contact.

Error to a judgment of the Circuit Court of Dinwiddie county, rendered September 23, 1892, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The defendant demurred to the evidence of the plaintiff, and the court sustained the demurrer and rendered judgment in favor of the defendant.

The opinion states the evidence.

*Staples & Munford* and *P. A. L. Smith,* for the plaintiff in error.

*Geo. S. Bernard* and *W. H. Mann,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

The question involved in this case is the liability of the Norfolk and Western Railroad Company for the alleged negligent killing of the plaintiff's intestate, who was a trespasser upon the premises of the defendant company.

The court, in a very recent opinion, has prescribed what seems to us a wise and just rule for our guidance in cases like this. It is there said that the plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was proximately caused by omissions of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if he has sufficient notice or belief to put a prudent man on the alert, and he does not take such precautions as a prudent man would take under similar notice or belief. *Seaboard and Roanoke R. R. Co.* v. *Joyner's Adm'r, ante,* p. 354. So far as pertinent to the question now under consideration, the facts proven can be briefly stated.

The accident occurred on the 30th of January, 1892, about 2:20 P. M. The defendant company was running its train, consisting of engine and tender, two passenger coaches, and one baggage-car, west from the city of Petersburg, and near Wilson station. The engine was in first-class order, and the whole train thoroughly equipped with all the most improved appliances to secure its control, and the engineer was a trusted employee, with twenty-six years of experience in his business. On the engine was the engineer, who was sitting on the right-hand side of the cab, an assistant supervisor, who was seated on the left-hand side, and the fireman, who was standing just in rear of the engineer. There is some speculation whether deceased was drunk, stricken with epilepsy, or asleep. That, however, is immaterial. He was found stretched full length upon the ground, with his head between two cross-ties, and very near the right-hand rail, and his body and feet extending straight down the slope of the road-bed and out towards the embankment. He was lying partly on his back, with his face somewhat turned in the direction from which the train was coming, and was struck on the head by the pilot of the engine, and died in about two hours after the injury was received. From the point where the deceased was lying the track was straight for a distance of about two miles in the direction from which the train was approaching, with nothing to obstruct the view. The only eye-witnesses, and the only persons with any personal knowledge of the accident, were the engineer, the fireman, and the supervisor, who were in the cab.

The engineer and supervisor were called as witnesses on behalf of the plaintiff. The engineer testified that his train was running forty or forty-five miles an hour, its usual rate of speed; that he was looking out all the time, and that when about 150 yards distant he discovered what he took to be an old cross-tie lying in the ditch, or an old coat; that he had

no idea it was a human being; that when he first discovered
that the object was a human being he was within thirty-five
or forty feet of it, and immediately applied his brakes, but
could not possibly have stopped the train in time to have pre-
vented the accident; that he did not take his attention off
the object after he saw it might be something serious, and
that he discovered it was a human being as soon as he could
have done so.

The supervisor testified that he first saw the object at a dis-
tance of 500 yards, though about the distance he was not cer-
tain; that it looked to him like an old cross-tie that had been
pulled out and was lying in the ditch.

Fireman Kelly, introduced by the defendant, was also look-
ing out, and first saw the object 150 or 200 yards ahead, and
took it to be a section-hand's coat.

This object was seen by these three witnesses, and seems to
have made about the same impression upon each of them.
It does not appear to have been regarded as of sufficient im-
portance to be commented on, for neither mentioned it to the
other. No one of them took deceased to be a human being.
They all took the object they saw to be something lifeless—
something that could not be hurt. These are the material
facts disclosed by the evidence. The court is of opinion that
there was not sufficient notice or belief of the danger to
which deceased was exposed to put a prudent man on the
alert, and to cause the engineer, under the circumstances of
this case, to do more than he did to avert the accident. The
engineer is the plaintiff's witness. He states positively that
he first saw the object at a distance of 150 yards; that he
took it to be a tie, or a coat, lying in the ditch at the side of
the track; that he had no idea it was a human being, and
that he discovered it to be a man as soon as he could have
done so, but it was too late to do anything to save the de-
ceased. This is corroborated by the evidence of the super-

visor, another witness for the plaintiff, and there is nothing to contradict it.

There was then no notice or belief that deceased was in danger, and there was nothing to cause a prudent man to think there was danger ahead. On the contrary, the track was clear. The fact that the engineer saw what he supposed to be an inanimate object, lying in the ditch at the side of the track, was not sufficient to impose upon him the duty of taking steps to stop his train. No such degree of caution is required under the rule to which we have adverted. Railroad companies would fall far short of meeting the demands of the public if they had to stop whenever they saw an object lying on the side of the road-bed, for fear it might be a trespasser in danger. When they have sufficient notice, or sufficient ground to believe that a trespasser is in danger, they owe him the duty of protection, as far as possible consistent with their higher duty to passengers. But when no one is known or believed to be in danger, they are under no obligation to prepare for what is not anticipated, or to stop and examine where no harm is suggested by the circumstances.

It would be wholly unprofitable to prolong this opinion by considering other exceptions of the plaintiff in error to the rulings of the court below; for, whether the court erred or not in the rulings complained of, it cannot change the result. The line of evidence sought to be brought out by the questions objected to, if admitted, could not alter the effect of the uncontradicted facts proven by the plaintiff's witnesses.

We are therefore of opinion that the Circuit Court did not err in sustaining the demurrer to the plaintiff's evidence, and its judgment in favor of the defendant is affirmed.

*Affirmed.*