## PETRONA ORTIZ, Plff.,

*v.*

## THE AMERICAN RAILROAD COMPANY OF PORTO RICO, Dft.

---

San Juan, Law. No. 1163.

On Motion for a Nonsuit.

Jurisdictional Amount—Expectancy of Life of the Plaintiff.

    1. Where the evidence shows that it was a rule of the deceased to give plaintiff a certain sum of money weekly, and these sums during the expectancy of life of the plaintiff would exceed the jurisdictional amount, the court has jurisdiction of the case.

---

Note.—On duty of railroad company to keep lookout for trespasser on track, see notes in 25 L.R.A. 287; 8 L.R.A. (N.S.) 1069; and 41 L.R.A. (N.S.) 264.

Ortiz v. American R. Co.

Negligence—Railroad—Trespassers.

 2. It is not the duty of a railroad company to maintain a special lookout for trespassers on its tracks, except at public crossings and within the limits of cities and towns, and then it is only bound to exercise reasonable care.

Negligence—Drunken Persons—Presumption.

 3. The presumption of law is that people are sober, and not drunk, and a railroad engineer is justified in relying upon this presumption, and a person who goes upon a railroad track in a drunken condition is guilty of contributory negligence.

Opinion filed December 21, 1916.

——————

*Mr. H. R. Francis* for plaintiff.

*Mr. F. H. Dexter* for defendant.

HAMILTON, J., delivered the following opinion:

At the close of the plaintiff's evidence, a motion was made for a nonsuit on several grounds. Two in particular may be mentioned.

1. First, that sufficient damages have not been shown by plaintiff's evidence. That hardly seems to be the case on account of what has been said heretofore. As I recall it, there is evidence that should go to the jury, tending to show that the deceased gave his mother about $2½ a week. Whether he always did it, as a matter of fact, and would always do it in the future, of course is a matter that cannot be passed on now. But there is evidence tending to show that he did it, and that was the rule. This would amount to $125 or more a year, and in eight years and six months, the expectancy of life of the plaintiff, would ex-

IX. Porto Rico.—21.

ceed the thousand dollars, which is the jurisdictional limitation for cases in this court. So much can be regarded as proved, and, so far as that ground is concerned, the motion is refused.

2. A more serious ground is as to whether sufficient has been shown by the plaintiff in regard to negligence on the part of the defendant. The rule seems to be that it is not the duty of a railroad company or of the employees on its trains to look out for trespassers. 2 L.R.A.(N.S.) 499, and abundant notes are cited. The same thing occurs in Columbus & W. R. Co. v. Wood, 86 Ala. 164, 5 So. 463. "Except at public crossings, and within the limits of cities and towns, a railroad company is under no obligation to maintain a special lookout for intruders or trespassers upon its track, and is only bound to the exercise of reasonable diligence after they are or ought to be discovered; and the fact that the trespasser was at the time intoxicated does not affect the principle, when it is not shown that the persons in charge of the train had knowledge of it." I am giving at present simply the principle. We will see how it applies in a few minutes. The same principle came up in a leading case,—New York, N. H. & H. R. Co. v. Kelly, 35 C. C. A. 571, 93 Fed. 745. The point there was that a railroad company is not responsible for running over a trespasser who, sober or drunk, has located himself between its tracks and gone to sleep, in the absence of wanton negligence in the management of the train on the part of the employees in charge. "Where those in charge of a railroad train discover a person on a trestle, from which he cannot step off to a place of safety, it is their duty to stop the train if possible. . . . And even if such person might save himself by a perilous jump of 11 feet to the ground, it is the duty of the engineer, upon discovering his peril, to resolve all doubt in favor

Ortiz v. American R. Co.

of human life, and forthwith reverse his engine, and put on the brakes. . . . Persons operating a railroad train are not permitted to speculate, in such case, whether a trespasser will jump from the trestle, or lie down, or in some other way get out of harm's way, a moment after it becomes evident that he is insensible of the impending danger, or incapable of providing for his safety. The moment that a person goes upon such a bridge his peril is manifest and imminent, and the railroad employees, having this knowledge, are required to exercise reasonable care to avoid a collision." Numerous authorities are cited in the note to Union P. R. Co. v. Cappier, 69 L.R.A. 526. The rule that a railroad company is not bound to maintain a lookout for trespassers on its track is found in many cases. Amongst others is that of Louisville, H. & St. L. R. Co. v. Hathaway, 121 Ky. 666, 2 L.R.A.(N.S.) 498, 89 S. W. 724. It goes on to say: "As to a trespasser who is lying beside a railroad track, the trainmen are not bound to stop the train as soon as the object seen by them 'looks like a man,' but they may wait until the fact that it is a man appears. Those in charge of a railroad train are not bound, upon seeing a trespasser lying beside the track in a safe position, to anticipate that he may move so as to place himself in peril, and to stop the train upon that assumption. If a trespasser near a railroad track is in fact in a safe position, although it seems perilous to those in charge of the train, the railroad company cannot be held liable for their failure to stop the train because he actually changes his position to one of peril just before the train reaches him, so that he receives an injury."

3. Of course all the points read are not entirely germane. I have to take the cases as they come, and there are other cases cited in the notes. Now, those being the principles, the ques-

Ortiz v. American R. Co.

tion arises, What are the facts in this particular case and how does the law apply to them? As I understand the evidence of the expert introduced by the plaintiff, with this engine under ordinary circumstances at night, the lights being in good order and everything being normal, it was testified that the engineer can distinguish a man on the track 80 to 90 meters away, and the same witness, upon being recalled, said that the engineer can stop the train in 60 to 70 meters. The plaintiff's intestate in this case was upon the defendant's right of way near Bayamon about 8 or 9 o'clock at night. The defendant's train was coming from the direction of Mayaguez, Dorado, or one of the towns to the west of Bayamon. The engineer Quintana testified that this was a freight train of twelve cars; that the train was all properly equipped with lights, and that he was looking out; that he saw the man 60 to 70 meters away; that he whistled, rang the bell, etc., and as soon as he observed that the man did not get off the track he stopped the train. Those, as I understand, are substantially the facts proved by the plaintiff. The question is, How does the law apply to them?

I think that a railroad company, the American Railroad Company of Porto Rico in this case, was not bound to have any special lookout for trespassers between road crossings. There is not actual evidence that this was commonly used by the public, but it is in evidence that at least two other men were on or near this right of way at the time of the accident. I do not think that the company was under any special obligation to be on the lookout for trespassers on the track at this place. The plaintiff's intestate was guilty of negligence. There is no question, I think, about that under the authorities, from his being on the track at all, and especially being on the track in a staggering or

drunken condition. Whether he was walking towards the train or walking away from the train does not seem to be clear, but he was on the track a short distance in front of the train, as it turned out. Is there enough evidence to go to the jury that there was the kind of negligence on the part of the defendant that the law would require for it to be held responsible? As to what that negligence is, it is differently expressed. It is sometimes said to be wilful, and it seems to be stronger than gross, negligence. The authorities, some of which I have cited, among them being 35 C. C. A. 571, 93 Fed. 745, seem to require that the negligence shown be more than ordinary negligence; that it must be wilful, or at least gross, negligence. Has the plaintiff shown that under the evidence in this case? The engineer had other duties besides looking at the track. He had to look after the engine too. The most that he could have done with the lights that he had would have been to discover a man 80 or 90 meters, I believe it was, away. Suppose that he was on the lookout and did discover him 80 or 90 meters away. If he had immediately stopped his train he could have stopped it in time to avoid hitting him, because he could have stopped it in 60 to 70 meters. But in talking about a distance of 20 meters, we are not talking about much more than the length of this room or a little more possibly than the length of this room. That is infinitesimal when one is running a railroad train at 20 to 25 kilometers an hour; it would be requiring a very high degree of care to say that the engineer ought, as soon as he saw a man on the track, to stop his train, and that is not the law. As I understand the law, an engineer, like anybody else, has a right to presume that a man that he sees on the track or anywhere else is sober. There is no presumption that people are drunk. There is

Ortiz v. American R. Co.

no presumption that a man on the railroad track is drunk. The presumption is the other way, that he is sober. He is a trespasser, and the presumption is that he will get out of the way of the train when he discovers it, or when the whistle advises him that the train is near him; and the duty of a railroad engineer, as I understand it under the authorities, is, as soon as he discovers a man upon the track, to whistle, or ring the bell, or give some such signal as would probably attract his attention. If this is not complied with, he must then stop the train, but he has a right to assume that the man is going to observe the first law of nature and protect himself when all he has to do is to take two steps at most to one side. I do not think there is any duty upon an engineer to stop the train when he sees a man on the track 80 to 90 meters off, and it would be requiring too much to expect the engineer within 20 meters to begin to stop the train. He has a right to assume that the man will step off, and there is no evidence that he discovered that the man was drunk when he first saw him. It is in evidence that the man was drunk and staggering, but there were only about 20 meters or 60 feet in which the engineer could have applied his brakes to act upon that knowledge. I do not think that, on the facts so far shown, it can be said that the company or the engineer of the defendant company was guilty of wilful negligence, perhaps any negligence at all, but I think certainly not wilful negligence in not applying the brakes within the 20-meter margin that he had. If he applied them after that, he would have run over the man; in fact he did run over him. I think the motion must be granted.

It is so ordered.